UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Tillman Infrastructure LLC,                    File No. 25-cv-3634 (ECT/LIB)

      Plaintiff,

v.                                             **OPINION AND ORDER**

Stearns County,

      Defendant.

---

Joseph S. Diedrich, Husch Blackwell LLP, Milwaukee, WI, and Jeffer Ali, Husch Blackwell LLP, Minneapolis, MN, for Plaintiff Tillman Infrastructure LLC.

Michael J. Ervin, Squires, Waldspurger & Mace, P.A., for Defendant Stearns County.

---

Tillman Infrastructure contracted with Verizon to build a new telecommunications tower in rural Stearns County. Verizon was providing services on a nearby tower, but it was paying high rents and sought to use the new tower as a more cost-effective alternative. Tillman applied for a conditional use permit, and Stearns County denied that application for failure to conform to goals in the County's comprehensive plan.

Tillman sued on federal and state law grounds, seeking an order reversing the denial and instructing the County to grant the application. Both parties moved for summary judgment on the administrative record.

The County's motion will be granted, and Tillman's motion will be denied. The County's decision had some problems. It listed four grounds for denial, but contradicted itself on two them, concluding that the proposal both did and did not conform to certain

goals or requirements.   But applying the deferential review in federal and state law, the County did enough to explain why it denied the application, and the non-contradictory reasons for denial are supported by substantial record evidence.

I

In September 2024, Plaintiff Tillman Infrastructure LLC applied for a conditional use permit to build a telecommunications tower ("Tillman Tower") for Verizon Wireless in Stearns County, Minnesota.  ECF No. 23-8 at 8.[1]  The Tillman Tower would be located on 103rd Avenue in Maine Prairie Township—an area zoned as an agricultural district— and it would be 325 feet high.  *Id.* at 4, 11; *see* ECF No. 23-19 (map of proposed location).

On July 24, 2025, the Stearns County Planning Commission met to consider Tillman's conditional use permit request "according to Sections 4.8, 7.28, and 9.2.5 of Stearns County Land Use & Zoning Ordinance Number 439."  ECF No. 23-17 at 1–2. Under that ordinance, the Planning Commission is tasked with conducting public hearings for conditional use permits, and the Commission's recommendation of approval or denial is taken up by the County Board of Commissioners.  Stearns County, Minn., Land Use and Zoning Ordinance #439 § 4.4 (2025) (ECF No. 23-21 at 51–52).

The cited zoning provisions govern the requirements and procedures for telecommunications conditional use permit requests.  Section 4.8 governs conditional use permits in general.  ECF No. 23-21 at 52–58.  On an application for a conditional use permit, "the Planning Commission and Board shall consider" several criteria, including

---

[1]   Page citations are to CM/ECF page numbers in the top right-hand corner, not the document's original pagination.

2

"the effect of the proposed use on the Comprehensive Plan"; "the ability of the use to be compatible or separated by distance or screening from adjacent land"; "the effect of the proposed use on groundwater, surface water and air quality"; "the effect of the proposed use on property values and scenic views in the surrounding area"; "whether the proposed use is allowed with a conditional use permit in the applicable zoning district in which the property is located"; "the effect that the proposed use will have on existing parks, schools, roads and other public facilities"; "the general health, safety and welfare of the residents; and "[f]inancial assurance mechanisms to guarantee reclamation or cleanup." *Id.* at 54 (citation modified) (Section 4.8.2). The Planning Commission and Board must also consider "the ability of the proposed use to meet the standards of this Ordinance or any applicable ordinance, rule or statute." *Id.* (citation modified). They must hold a public hearing and "shall make a written finding of fact on each application." *Id.* at 56 (Section 4.8.4). Section 9.2.5 provides that antennae "may be allowed as conditional uses following the procedures set forth in Section 4.8 of this Ordinance and further subject to the performance and general development standards contained in Sections 6 and 7 of this Ordinance." *Id.* at 228 (citation modified). Lastly, Section 7.28 governs telecommunication towers. *Id.* at 207–12. A conditional use permit application for a telecommunication tower must provide additional technical information specific to those structures. *Id.* at 211–12.

The Planning Commission also considered whether Tillman's proposal was consistent with the Stearns County "Living Goals" and "Connectivity Goals" set forth in the Stearns County 2040 Comprehensive Plan. *See* ECF No. 23-8 at 5; ECF No. 23-17 at

37; ECF No. 23-20 (Comprehensive Plan). Three of those goals are relevant here. Living Goal 2 reads, "[m]anage the impacts of growth and development on the County's rural character and natural resources." ECF No. 23-20 at 55. Connectivity Goal 2 seeks to "[c]oordinate infrastructure and service needs with development, and encourage development where the infrastructure and services are adequate to serve that growth." *Id.* at 111. Connectivity Goal 4 is to "[d]eploy fast and reliable internet technologies that are equitable, affordable, and take advantage of existing infrastructure assets." *Id.*

At the July 24 meeting, the Planning Commission heard public debate and considered Tillman's conditional use permit request. *See* ECF No. 23-17 (hearing transcript). Five of the Planning Committee members were present: David Bentrud, Tara Ostendorf, Jason Weinerman (the Chair), Rich Blenkush, and Dave Knafla. ECF No. 23-9 at 1.[2] A representative from Tillman's business partner, Buell Consulting, spoke in favor of the application. ECF No. 23-17 at 4–6. He explained that Verizon had been operating from another tower 0.6 miles away from the proposed site (the "American Tower"), and was paying high rents. *Id.* With the Tillman Tower, Verizon's rent payments would drop to below a third of its current costs, and AT&T—also operating from the American Tower—wanted to move to the Tillman Tower for the same reason. *Id.* Members of the public spoke (or submitted letters) in opposition to Tillman's application and cited a few common reasons: The Tillman Tower did not fit within the agricultural and rural character of the area, *id.* at 8–10, 13, 20, 22, it would disrupt the wildlife, *id.* at 10, 12–13, 19, 22,

---

[2]    Two Commission members were absent, Jason Kron and Jacob Holck. *Id.*

there were already two nearby towers providing adequate cellular service, *id.* at 11, 14–15, 24, and the tower would cause property values to fall, *id.* at 18.[3]  *See* ECF No. 23-10 at 6–15 (letters in opposition to the proposal making similar points).  An attorney representing Tillman rebutted those concerns, explaining that there would be a National Environmental Policy Act study as part of the process, that Tillman considered the characteristics of the region, and that an expert report showed the tower would not adversely affect property values.  ECF No. 23-17 at 28–31.  The attorney was asked if Verizon would stop providing services if the Tillman Tower weren't built, but the attorney did not know the answer to that question.  *Id.* at 36.

The Planning Commission then closed the public hearing and orally stated its findings of fact.  *Id.* at 37–43.  Ms. Ostendorf concluded that Tillman's proposal was "consistent with Land Use & Zoning Ordinance 439 Section 4.8, 7.28 and 9.2."  *Id.* at 37.  Mr. Knafla determined that the proposal did not conform to Living Goal 2 or Connectivity Goal 2 because of "ambiguity about conversations or not having conversations or considering alternatives to using the existing tower."  *Id.* at 37–38.  Ms. Ostendorf agreed and added that she believed Connectivity Goal 4 was another barrier because of "existing infrastructure assets already present."  *Id.* at 38–39.  Mr. Knafla and Ms. Ostendorf disagreed whether the proposal was compatible with the existing neighborhood: Mr. Knafla said no, as it was close to housing, and Ms. Ostendorf said yes, because there were two

---

[3]     Members of the public were also concerned about radio frequencies, which they believed were harmful to health.  ECF No. 23-17 at 11, 16–17, 19, 22, 29.

towers nearby. *Id.* at 39. After this discussion, the Planning Commission voted to deny Tillman's application. *Id.* at 42–43.

The vote was 3 to 1. *See* ECF No. 23-9 at 8; ECF No. 23-17 at 43. Mr. Bentrud, Mr. Blenkush, and Ms. Ostendorf voted to deny the conditional use permit request. ECF No. 23-17 at 42–43. Mr. Knafla voted "nay," technically meaning he would not deny the application. *Id.* at 43. However, when Chair Weinerman asked if anyone opposed the motion to deny the application, there was no response. *Id.* at 42. (Chair Weinerman opposed the motion but abstained. *Id.*; *see* ECF No. 23-9 at 7.) Mr. Knafla may have misunderstood what his "nay" vote meant, as his comments indicated strong opposition to the Tillman Tower, *see* ECF No. 23-17 at 37–39, but his vote endorsed the application. And at least one other member was confused that an "aye" vote meant denying the application. *See* ECF No. 23-17 at 42–43.

On August 12, 2025, the Stearns County Board of Commissioners denied Tillman's conditional use permit application. ECF No. 23-14 (minutes); ECF No. 23-15 (decision). The Board adopted the findings of fact from the Planning Commission. ECF No. 23-14 at 3. In a two-page letter, the Board laid out those findings of fact, which are quoted in full:

> 1. The proposal is consistent with Land Use and Zoning Ordinance #439, specifically, 4.8, 7.28 and 9.2.5.
> 2. The proposal both does and does not conform to the Stearns County Comprehensive Plan. The proposal does not conform to Living Goal 2 and Connectivity Goals 2 and 4.
>
>    Living Goals:
>    • Manage the impacts of growth and development on the County's rural character and natural resources.

6

> Connectivity Goals:
> - Coordinate infrastructure and service needs with development and encourage development where the infrastructure and services are adequate to serve that growth.
> - Deploy fast and reliable internet technologies that are equitable, affordable, and take advantage of existing infrastructure assets.
>
> The proposal does conform to Connectivity Goal 2.
>
> Connectivity Goals:
> - Coordinate infrastructure and service needs with development and encourage development where the infrastructure and services are adequate to serve that growth.
>
> 3. The proposal is not compatible with the existing neighborhood as it is very close to existing housing. The proposal is compatible with the existing neighborhood, as there are two other towers in close proximity.
>
> 4. The applicant has demonstrated that the standards and criteria of Section 7.28 of the ordinance can be met.
>
> 5. Other issues pertinent to this matter:
>    - The public is concerned with public health, safety and welfare of the proposed tower.
>    - There will be a third condition added requiring a National Environmental Policy Act review as required by the Federal.
>    - Property value information was submitted by the applicant.

ECF No. 23-15 at 1–2.

In September 2025, Tillman brought this suit, raising claims under the Telecommunications Act of 1996 and for state-law certiorari review. Compl. [ECF No. 1] ¶¶ 45–62. The parties both moved for summary judgment on the administrative record. ECF Nos. 27, 31.

7

II

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. When, as here, there are cross-motions for summary judgment, each side receives the benefit of this rule in response to the other side's motion. *See, e.g.*, *Fjelstad v. State Farm Ins. Co.*, 845 F. Supp. 2d 981, 984 (D. Minn. 2012). When considering Tillman's motion, the record must be viewed in the light most favorable to the County, and when considering the County's motion, the record must be viewed in the light most favorable to Tillman. *See id.*

A

The Telecommunications Act of 1996 aims "to promote competition and higher quality in American telecommunications services and to encourage the rapid deployment of new telecommunications technologies." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005) (citation modified). "One of the means by which [Congress] sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Id.*; *see USCOC of Greater Mo., LLC v. County of Franklin*, 636 F.3d 927, 930 (8th Cir.

2011) ("In section 332(c)(7) of the [Act], Congress preserved the authority of state and local governments over zoning and land use issues, but imposed limitations on that authority."). "Essentially, the [Act] 'strikes a balance between two competing aims—to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of towers.'" *County of Franklin*, 636 F.3d at 930 (quoting *Omnipoint Commc'ns, Inc. v. City of White Plains*, 430 F.3d 529, 531 (2d Cir. 2005)).

When a telecommunication company applies to a State or local government to "place, construct, or modify personal wireless service facilities," and the locality denies the application, the decision denying the application "shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). This provision requires the locality to "provide or make available [its] reasons," and those reasons must be "sufficiently clear." *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 295 (2015). Federal courts have jurisdiction to review application denials. 47 U.S.C. § 332(c)(7)(B)(v). "In order to determine whether a locality's denial was supported by substantial evidence, as Congress directed, courts must be able to identify the reason or reasons why the locality denied the application." *City of Roswell*, 574 U.S. at 300. That explanation need not be detailed or prolix, but it must be "sufficient to permit meaningful judicial review of whether the record contains substantial evidence to support the board's decision." *Sprint Spectrum, L.P. v. Platte County*, 578 F.3d 727, 732 (8th Cir. 2009); *see City of Roswell*, 574 U.S. at 302 ("We stress, however, that these reasons need not be elaborate or even sophisticated, but rather . . . simply clear enough to enable judicial review.").

"Substantial evidence" in § 332(c)(7)(B)(iii) is a "term of art" borrowed from administrative law. *City of Roswell*, 574 U.S. at 301. That standard has been described in various ways: An agency must "clearly disclose[]" or provide "[c]omplete statements" of the grounds of its decision, or "articulate a satisfactory explanation for its action." *Id.* at 301–02 (first quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943); then quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); and then quoting *Beaumont, S.L. & W. Ry. Co. v. United States*, 282 U.S. 74, 86 (1930).). The standard is not demanding. *NE Colo. Cellular, Inc. v. City of North Platte*, 764 F.3d 929, 936 (8th Cir. 2014). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence, however, does not mean a preponderance of the evidence." *Id.* (quoting *Menendez-Donis v. Ashcroft*, 360 F.3d 915, 919 (8th Cir. 2004)). Courts give "significant deference to the fact-finder," and will affirm where "a reasonable fact-finder could reach" the locality's conclusion. *USCOC of Greater Iowa, Inc. v. Zoning Bd. of Adjustment for the City of Des Moines*, 465 F.3d 817, 821–22 (8th Cir. 2006). The party seeking to overturn the decision bears the burden "to show that the decision is not supported by substantial evidence." *Id.* at 821.

With a few exceptions not relevant here, the substantive criteria for approving or denying an application come not from the Telecommunications Act but from state and local law.[4]    *See Sprint Spectrum*, 578 F.3d at 733 ("The [Act's] 'substantial evidence'

---

[4]    One exception is that a locality may not "regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects

requirement is 'directed at whether the local zoning authority's decision is consistent with the applicable local zoning requirements.'" (quoting *VoiceStream Minneapolis, Inc. v. St. Croix County*, 342 F3d 818, 830 (7th Cir. 2003))); *Cellular Tel. Co. v. Town of Oyster Bay*, 166 F.3d 490, 494 (2d Cir. 1999) (noting that the Act "does not affect or encroach upon the substantive standards to be applied under established principles of state and local law" (citation modified)).

Start with the written reasons for the County's decision.  Two of the four grounds for denial will not be credited because they are mutually inconsistent:  that Tillman's proposal conforms and does not conform to Connectivity Goal 2, and that it is and is not compatible with the existing neighborhood.  ECF No. 23-15 at 1–2.  Calling these contradictory statements "findings of fact" is semantically dubious.  In context, the explanation for these apparent discrepancies is obvious—different members of the Planning Commission came to different conclusions on each question.  Ms. Ostendorf believed the proposal met both goals, and Mr. Knafla thought otherwise.[5]  *See* ECF No.

---

of radio frequency emissions to the extent that such facilities comply with Commission's regulations concerning such emissions."  47 U.S.C. § 332(c)(7)(B)(iv); *see Telespectrum, Inc. v. Pub. Serv. Comm'n of Ky.*, 227 F.3d 414, 424 (6th Cir. 2000).  Some individuals cited health concerns about radio waves at the hearing, but the Planning Commission and Board did not rely on these statements in reaching their decision.  The other exceptions are similarly irrelevant here.  *See* 47 U.S.C. § 332(c)(7)(B)(i) (barring localities from "unreasonably discriminat[ing] among providers of functionally equivalent services" and from "prohibit[ing] or hav[ing] the effect of prohibiting the provision of personal wireless services").

[5]    Oddly enough, Ms. Ostendorf voted to deny the application, and Mr. Knafla opposed that motion.  ECF No. 23-9 at 8.  No other Planning Commission member echoed Mr. Knafla's statement that the proposal was incompatible with the existing neighborhood.  *See* ECF No. 23-17 at 39.

23-17 at 38–39. But that context does not rescue the contradictory reasons, because the record is not "clear enough to enable judicial review." *City of Roswell*, 574 U.S. at 302.

The County's decision rests on two other grounds, failure to conform to Living Goal 2 and Connectivity Goal 4. ECF No. 23-15 at 1–2. Those goals, respectively, are to "[m]anage the impacts of growth and development on the County's rural character and natural resources," and to "[d]eploy fast and reliable internet technologies that are equitable, affordable, and take advantage of existing infrastructure assets." *Id.* These grounds are presented clearly enough to enable judicial review. *See City of Roswell*, 574 U.S. at 302.

Though the County's decision simply recites Comprehensive Plan provisions and points to no record evidence for support, the Eighth Circuit has affirmed summary judgment to a locality offering similarly terse explanations. In *NE Colorado Cellular*, the defendant city council's written record stated, "[t]he use is not in harmony with the character of the area and it is not the most appropriate use of the land as it is a historic neighborhood." 764 F.3d at 931.[6] This skeletal explanation repeated almost verbatim the relevant zoning ordinance, which "provides that conditional uses must 'be in harmony with the character of the area and the most appropriate use of the land.'" *Id.* (quoting ordinance). All that the city council added was that the proposed site was in a historic neighborhood.

---

[6] The city council also concluded that the proposed tower could decrease local property values, but the district court found this reason was not supported by substantial evidence. *NE Colo. Cellular*, 764 F.3d at 932.

12

*See id.* Similarly, in *Sprint Spectrum*, a panel majority found the following reasons enough

to be "in writing" under § 332:

> The location and size of the Special Use, the nature and intensity of the operation involved in or conducted in connection with it, and the location of the site with respect to the streets giving access to it are such that the Special Use will dominate the immediate neighborhood so as to prevent development and use of neighboring property in accordance with the applicable zoning district regulations. In making this determination, consideration has been given to the location, nature and height of the buildings, structures, walls and fences on the site and the nature and extent of landscaping and screening on the site.

578 F.3d at 731. Although the dissent pointed out that this paragraph "simply mirrored the

first four of seven general standards listed in the Platte County Code for granting or denying

special use permits," *id.* at 734 (Bye, J., dissenting), the majority held that "merely

recit[ing]" a zoning ordinance was sufficient to meet § 332's "in writing" requirement in

that case, *id.* at 732 n.2 (majority opinion). Assuming that "the written denial must furnish

a statement of reasons to facilitate judicial review," the panel majority concluded that "an

incorporation of the Zoning Order in this case provides adequate guidance concerning the

Commission's rationale." *Id.*; *see City of Roswell*, 574 U.S. at 302 (affirming the

assumption in *Sprint Spectrum*, "that localities must provide reasons when they deny cell

phone tower siting applications"). And as the district court in *Sprint Spectrum* explained,

> a "sufficient explanation" is one that allows a reviewing court to *evaluate* the record for support, [and] there is no requirement, nor need there be, that the decision specifically identify the portions of the record upon which the denial was based. Although a more specific explanation of the reasons for denial would be of greater value, especially to Plaintiff, the

> Court finds that the reasons stated are sufficient for the purposes of review of the record for substantial evidence.

*Sprint Spectrum L.P. v. County of Platte*, No. 06-6049-CV-SJ-DW, 2007 WL 2994362, at *3 (W.D. Mo. Oct. 11, 2007), *aff'd*, 578 F.3d 727 (8th Cir. 2009).[7]

Here, the cited reasons for denial repeat general provisions of the Comprehensive Plan and do not cite any evidence in the record. *Compare* ECF No. 23-15 at 1–2 (showing Living Goal 2 and Connectivity Goal 4), *with* ECF No. 23-20 at 55, 111 (showing identical provisions). No doubt a more original and detailed explanation would have been helpful, and within the capabilities of a board staffed by laypeople, but these grounds are clear enough to enable judicial review. Considered against the administrative record, the Plan provisions identify the Planning Commission's reasons sufficiently to enable judicial review.

There is substantial evidence supporting the Tillman proposal's non-conformity with Living Goal 2. *See generally* ECF No. 23-15 at 1 ("Manage the impacts of growth and development on the County's rural character and natural resources."). Tillman acknowledged that "[t]he area is rural in nature." ECF No. 23-8 at 39. Members of the public argued the tower would disrupt the rural and agricultural character of the land. *See* ECF No. 23-17 at 9–10 ("I fail to see how a communications tower fits within . . . the

---

[7]     Courts outside this Circuit have reasoned that parroting language from an ordinance is not substantial evidence. *See T-Mobile Cent., LLC v. Charter Township of West Bloomfield*, 691 F.3d 794, 801 (6th Cir. 2012) ("Merely repeating an ordinance does not constitute substantial evidence."); *T-Mobile Ne. LLC v. City of Lawrence*, 755 F. Supp. 2d 286, 291 (D. Mass. 2010) ("A mere recitation of provisions of a local zoning ordinance does not constitute 'substantial evidence' under the [Telecommunications] Act."). But these courts do not analyze parroted language under the "in writing" requirement.

ordinance at all, because it's farmland."); *id.* at 13 ("[A]nother tower in our area would ruin more than just the landscape. It would ruin the whole fiber of what we are out there."); *id.* at 20 ("This tower doesn't fit this neighborhood, not visually, not environmental[ly], and in spirit."); *id.* at 22 ("[The tower] would eliminate farming on the property. . . . The tower will fragment habitat and destr[oy] the local ecosystem."). Under Eighth Circuit precedent, that amounts to substantial evidence that the tower would be detrimental to, and out of character with, the location's rural nature. *See NE Colo. Cellular*, 764 F.3d at 936–37 ("Here, the City Council had before it the testimony of a dozen residents that the proposed tower would be an 'eyesore,' would be inappropriate for the neighborhood, and would not be harmonious with the neighborhood. In the context of a zoning decision, this is enough for a 'reasonable mind' to accept as 'adequate to support a conclusion' that the proposed tower would be out of place in the neighborhood."); *Sprint Spectrum*, 578 F.3d at 733 ("Aesthetic concerns can be a valid basis on which to deny Sprint's permit, so long as the aesthetic judgment is grounded in the specifics of the case and not based on generalized aesthetic concerns that are applicable to any tower, regardless of location." (citation modified)).

Substantial evidence also supports non-conformity with Connectivity Goal 4. *See generally* ECF No. 23-15 at 2 ("Deploy fast and reliable internet technologies that are equitable, affordable, and take advantage of existing infrastructure assets."). There is no dispute that two other towers exist nearby, *see* ECF No. 23-8 at 9 (showing map of proposed location and other towers), or that they provide adequate telecommunications services to the locality, *see* ECF No. 23-17 at 11 ("There's no need for this tower. There's

15

capacity on the existing towers."); *id.* at 16 ("There's little to no benefit to the community given the existing nearby communication infrastructure."); *id.* at 19 (describing the proposal as "more like a cost-cutting move than a service necessity"); *id.* at 22 (noting "[t]wo towers nearby already"). These statements are evidence that the proposal did not conform to the County's goal of "utiliz[ing] existing buildings and/or structures" in agricultural and rural areas. ECF No. 23-20 at 148. Tillman did not provide evidence showing that the current telecommunications services were inadequate, just that they were relatively costly. *See* ECF No. 23-17 at 6 (Tillman's statement that the new tower would "serve the area in an economically feasible way"). When Ms. Ostendorf asked Tillman's representative at the hearing whether Verizon would maintain its equipment on the American Tower if the proposal were denied, the representative replied, "I think they are going to have to or not provide service in that area." *Id.* at 35–36. And the representative did not know the "chances" that Verizon would remove equipment from the American Tower in that circumstance. *Id.* at 36. The County's conclusion that "there does seem to be existing infrastructure assets already present" and its decision to deny the permit request on that ground is supported by substantial evidence. *Id.* at 39 (statement of Ms. Ostendorf).

Tillman makes several arguments in opposition, but these are not persuasive. It argues that the County's conclusory statements and failure to cite any record evidence do not meet the § 332(c)(7)(B)(iii) requirements. ECF No. 29 at 20–21. Tillman cites cases in which localities provided insufficient reasons for denying an application: generalized aesthetic concerns, *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty.*, 546 F.3d 1299, 1312 (10th Cir. 2008); *APT Minneapolis, Inc. v. City of Maplewood*, No. 97-cv-2082

16

(JRT/RLE), 1998 WL 634224, at *5 (D. Minn. Aug. 12, 1998); *USOC of Greater Iowa, Inc. v. City of Bellevue*, 279 F. Supp. 2d 1080, 1086 (D. Neb. 2003), or untenable and cursory explanations, *Cellco P'ship d/b/a Verizon Wireless v. City of Milwaukee*, No. 23-cv-1581-bhl, 2024 WL 329001, at *6 (E.D. Wis. Jan. 29, 2024). ECF No. 29 at 21, 23. Stearns County did more than the municipalities in those cases. Unlike in *Wyandotte County*, *City of Bellevue*, and *City of Maplewood*, Stearns County relied on specific testimony of the region's rural character and the proposal's impact on wildlife, not generalized aesthetic concerns or "not in my backyard" complaints. Unlike in *City of Milwaukee*, Stearns County held a hearing, and its explanations find support in that record. *See* 2024 WL 329001, at *6.

Tillman argues that the County impermissibly ignored competing evidence. ECF No. 29 at 23; *see City of Bellevue*, 279 F. Supp. 2d at 1086 ("The Bellevue City Council gave no reasons, either orally or in writing, for discounting any of this evidence in favor of granting the conditional use permit."); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951) ("The substantiality of evidence must take into account whatever in the record fairly detracts from its weight."); *Genuine Parts Co. v. EPA*, 890 F.3d 304, 346 (D.C. Cir. 2018) ("[A]n agency cannot ignore evidence that undercuts its judgment; and it may not minimize such evidence without adequate explanation."). This is not convincing. Though a locality's decision is reviewed under the same substantial-evidence standard applied to agency actions, the Telecommunications Act does not require localities to provide "elaborate" or "sophisticated" explanations. *City of Roswell*, 574 U.S. at 302; *see Sprint Spectrum*, 578 F.3d at 732 ("Congress undoubtedly recognized that local boards are

17

primarily staffed by laypeople, and that it is not realistic to expect highly detailed findings of fact and conclusions of law." (citation modified)).  Further, the County acknowledged several ways in which Tillman's application conformed with the applicable rules—it was "consistent with Land Use and Zoning Ordinance #439, specifically, 4.8, 7.28 and 9.5," and it "demonstrated that the standards and criteria of Section 7.28 of the ordinance can be met."  ECF No. 23-15 at 1–2.  Lastly, the evidence ignored does not undermine the County's decision under the deferential standard of review.  *See* ECF No. 29 at 23 ("The County offered no explanation for how the *proposed* tower would violate Living Goal 2, but the two nearby *existing* towers would not.").  This is not evidence; it is argument.  The County was not deciding whether the other two towers conformed to the Comprehensive Plan, and the parties have not identified authorities concluding that previous locality decisions are binding on subsequent boards and commissions under the Telecommunications Act.  Tillman also notes it submitted "a narrative description from an engineering consultant, a letter from Verizon, and a sworn statement from AT&T" that "all explain[] why co-location on an existing tower was infeasible."  ECF No. 29 at 25.  Tillman's evidence only showed that co-location was economically infeasible, *see* ECF No. 23-8 at 17–18 (Verizon letter); ECF No. 23-10 at 3–5 (AT&T sworn statement), and that evidence does not undermine the County's determination that the Tillman Tower failed to conform to the rural character of the area and would not maximize existing telecommunications infrastructure.

Tillman argues that the County's decision is contradictory in a more subtle sense.  The County concluded that the proposal conformed to Section 7.28, and one of that

18

provision's purposes is to "[m]aximize the use of existing and approved towers and buildings to accommodate new wireless telecommunication antennas in order to reduce the number of towers needed to serve the County." ECF No. 23-21 at 207 (Section 7.28.1(D)). In Tillman's view, Section 7.28 liquidates or fleshes out the broader Connectivity Goal 4, in which the County aims to "take advantage of existing infrastructure assets." ECF No. 23-20 at 111. As Tillman sees it, the application could not possibly meet Section 7.28's requirements while also failing to conform to Connectivity Goal 4. ECF No. 29 at 24–25. This argument is also unconvincing. That Section has many other requirements on technical matters like placement of guy wire anchors (Section 7.28.2(E)), galvanized finishes to support structures (Section 7.28.2(G)), and antenna height (Section 7.28.4(B)(1)). ECF No. 23-21 at 207–08, 210. It seems reasonable that a proposal might comply with these specifications and still fail to further one of the Section's purposes, and that is the most natural read of the County's findings of fact. Tillman's preferred interpretation is not consistent with the Supreme Court's allowance that locality decisions need not be "elaborate" or "sophisticated." *City of Roswell*, 574 U.S. at 302.

B

Tillman's claim for relief under state law requires a separate analysis. A Minnesota statute provides:

> The governing body may by ordinance designate certain types of developments, including planned unit developments, and certain land development activities as conditional uses under zoning regulations. Conditional uses may be approved by the governing body or other designated authority by a showing by the applicant that the standards and criteria stated in the ordinance will be satisfied. The standards and criteria shall

19

> include both general requirements for all conditional uses, and insofar as practicable, requirements specific to each designated conditional use.

Minn. Stat. § 462.3595, subdiv. 1. "Ruling on a conditional use permit application is a quasi-judicial act" and "is reviewable by writ of certiorari." *Interstate Power Co. v. Nobles Cnty. Bd. of Comm'rs*, 617 N.W.2d 566, 574 (Minn. 2000).

Courts analyze conditional use permit denials in two steps. First, they "assess the legal sufficiency of the reasons given by the [locality]," and second, they "determine whether, if legally sufficient, [the locality] had a factual basis." *C.R. Invs., Inc. v. Village of Shoreview*, 304 N.W.2d 320, 325 (Minn. 1981). If the reasons are legally insufficient or lack a factual basis, the decision is arbitrary and capricious. *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75–76 (Minn. 2015). Courts are to give deference to local decisionmakers and reverse only where the "decision has no rational basis." *White Bear Docking & Storage, Inc. v. City of White Bear Lake*, 324 N.W.2d 174, 176 (Minn. 1982). In a conditional use permit[8] case, "'reasonableness' is measured by the standards set out in the local ordinance." *Id.*; *see Honn v. City of Coon Rapids*, 313 N.W.2d 409, 417 (Minn. 1981) ("[I]n granting or denying a special use permit, . . . the zoning authority is applying specific use standards set by the zoning ordinance to a particular individual use."). The decisionmaker's denial "must state in writing the reasons for the denial," Minn. Stat. § 15.99, subdiv. 2(c), although oral denials are allowed if "those voting against the

---

[8]     *White Bear Docking & Storage* refers to "special use permits," which is interchangeable with "conditional use permits." *See Zylka v. City of Crystal*, 167 N.W.2d 45, 48 (Minn. 1969).

resolution 'state on the record the reasons why they oppose the request,'" *Minn. Towers, Inc. v. City of Duluth*, 474 F.3d 1052, 1055 (8th Cir. 2007) (quoting Minn. Stat. § 15.99, subdiv. 2(b)).  The party that seeks review "bears the burden of persuasion that these reasons are either without factual support in the record or are legally insufficient," *Barton Contracting Co. v. City of Afton*, 268 N.W.2d 712, 717 (Minn. 1978), and "[n]ot all of the reasons stated need to be legally sufficient and supported by facts in the record," *Hubbard Broadcasting, Inc. v. City of Afton*, 323 N.W.2d 757, 765 n.4 (Minn. 1982).

Ordinarily, denying a conditional use permit would be arbitrary if "all of the standards specified by the ordinance as a condition to granting the permit have been met." *Zylka v. City of Crystal*, 167 N.W.2d 45, 49 (Minn. 1969) (footnote omitted); *See RDNT*, 861 N.W.2d at 78;  *Picha v. County of McLeod*, 634 N.W.2d 739, 742 (Minn. Ct. App. 2001).  However, the Minnesota Supreme Court has recognized an exception where the proposal was permitted by the zoning code but was incompatible with a municipal comprehensive plan.  *See Barton Contracting*, 268 N.W.2d at 717 ("A municipality may weigh whether the proposed use is consistent with its land-use plan in deciding whether to grant a special-use permit."); *C.R. Invs.*, 304 N.W.2d at 326 (recognizing exception); *Hubbard Broadcasting*, 323 N.W.2d at 763 ("Afton's determination that the Hubbard proposal was inconsistent with its comprehensive plan was a legally sufficient reason for denial of a special-use permit.").

Minnesota courts are wary, however, of applying this exception when the comprehensive plan is "unreasonably vague or subjective." *In re USS Great River Solar LLC*, No. A21-1504, 2022 WL 4295368, at *7 & n.9 (Minn. Ct. App. Sep. 19, 2022);

21

*accord Bryan v. Renville Cnty. Bd. of Comm'rs*, No. C1-98-978, 1998 WL 764088, at *1 (Minn. Ct. App. Nov. 3, 1998); *In re Impact Power Sols., LLC*, No. A21-0925, 2022 WL 1448223, at *2 (Minn. Ct. App. May 9, 2022); *see Hay v. Township of Grow*, 206 N.W.2d 19, 23 (Minn. 1973) ("The absence of more express standards makes denial of a special-use permit more, not less, vulnerable to a finding of arbitrariness."). For example, in *C.R. Investments*, the council denied the permit for failure to comply with the "general purpose and intent of the Comprehensive Plan" because "[t]he proposed site plan indicates building orientation is not in harmony with the existing neighborhood," "[i]t has not been demonstrated that the proposed use is an improvement in the development plan for this area of the City," and "[i]n this area of the City, the highest design standards are necessary to achieve neighborhood compatibility." 304 N.W.2d at 326. Denying the conditional use permit for these reasons, without any definitions of "improvement" or "highest design standards," was arbitrary and capricious. *Id.* at 328.

Here, because the County determined that Tillman's proposal complied with all the relevant zoning ordinances, the denial is arbitrary and capricious unless nonconformity with the Comprehensive Plan is a legally sufficient reason. *See id.* at 326. Under that exception, the County's action would not be arbitrary so long as the cited inconsistency avoided unreasonable vagueness or subjectivity.

Failure to conform to Living Goal 2 and Connectivity Goal 4 are legally sufficient reasons for denying Tillman's application because those provisions, although phrased in broad, high-level terms, are not unreasonably vague or subjective. Recall that those goals are to "[m]anage the impacts of growth and development on the County's rural character

22

and natural resources," and "[d]eploy fast and reliable internet technologies that are equitable, affordable, and take advantage of existing infrastructure assets." ECF No. 23-20 at 55, 111. These justifications resemble the reasons approved in two Minnesota Supreme Court decisions. Pioneering the comprehensive-plan exception, the court found a proposed gravel mining operation failed to conform to the municipal comprehensive plan, which was "permeated with evidence of a strong desire to preserve the rural character and unique scenic beauty of Afton and the St. Croix Valley," and those "aims . . . were discussed at the hearings." *Barton Contracting*, 268 N.W.2d at 717. The council's broadly-worded reasons denying the application—"it is contrary to the comprehensive plan," and "the end use would not be compatible with the comprehensive plan"—were legally sufficient and supported by evidence. *Id.* In *Hubbard Broadcasting*, the court accepted the city council's determination that the application "does not conform to the overall intent of the Comprehensive Plan" where the proposed satellite station would be placed on a geologically rare feature—a Bissell's Mound—in a designated "protection" area, and the plan provided that such features "shall be preserved in a natural state." 323 N.W.2d at 762–63. Similarly, while Living Goal 2 does not describe "the County's rural character and natural resources," the Comprehensive Plan details that vision, including the County's aim to preserve "viewsheds." ECF No. 23-20 at 55, 68, 145. The goal to "take advantage of existing infrastructure assets" is not unreasonably vague or subjective, especially when the presence of the two nearby towers was discussed at length. *Id.* at 111; *see* ECF No. 23-17 at 11, 14–15, 24. Several decisions from the Minnesota Court of Appeals also support this conclusion. *See In re USS Great River Solar*, 2022 WL 4295368, at *7 (finding

23

plan language "not reasonably vague or subjective" when it instructed the local board to follow the plan's "Future Land Use Factors when locating non-agriculturally oriented projects in an agricultural area"); *In re Impact Power Sols.*, 2022 WL 1448223, at *2 (finding plan language legally sufficient when it "provides that solar sites are to be situated 'in a way that reduces conflict with adjacent land uses'").[9]

These grounds for denial have factual support for the same reasons identified with respect to the federal claim. Tillman argues that "public comments alone 'do[] not provide a legally sufficient reason or substantial evidentiary support' for denial," but this is unconvincing. ECF No. 35 at 6 (quoting *Hurrle v. County of Sherburne ex rel. Bd. of Comm'rs*, 594 N.W.2d 246, 251 (Minn. Ct. App. 1999)). Minnesota law is clear that the mere fact of public opposition is not a legally sufficient reason to deny a conditional use permit application. *See Chanhassen Ests. Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 340 (Minn. 1984) ("[D]enial of a conditional use must be based on something more concrete than neighborhood opposition and expressions of concern for public safety and welfare."); *Scott Cnty. Lumber Co. v. City of Shakopee*, 417 N.W.2d 721, 728 (Minn.

---

[9]    It is true that the Minnesota Court of Appeals has said that, in denying a conditional use permit, the locality must provide written reasons "in more than just a conclusory fashion." *Picha*, 634 N.W.2d at 742 (quoting *Honn*, 313 N.W.2d at 416); *accord Kennecott Expl. Co. v. Aitkin Cnty. Plan. Comm'n*, No. A06-1078, 2007 WL 1894152, at *3 (Minn. Ct. App. July 3, 2007). In *Honn*, however, the Minnesota Supreme Court was discussing the procedure for rezoning decisions, a legislative decision that could not be resolved on a writ of certiorari. *See* 313 N.W.2d at 414, 416. *Picha* and *Kennecott* are unpersuasive because they do not explain why the *Honn* procedural requirements should apply to denials of conditional use permits, *see Picha*, 634 N.W.2d at 742; *Kennecott*, 2007 WL 1894152, at *3, which are quasi-judicial decisions reviewed by district courts on a writ of certiorari, *Interstate Power Co.*, 617 N.W.2d at 574.

Ct. App. 1988) ("Community opposition to a landowner's desire to use his property for a particular purpose is not a legally sufficient reason for denying a conditional use permit."); *Kennecott Expl. Co. v. Aitkin Cnty. Plan. Comm'n*, No. A06-1078, 2007 WL 1894152, at *4 (Minn. Ct. App. July 3, 2007) (finding commissioner's statement that "all the people that are here are against" the proposed use was a legally insufficient reason to deny the application). If the public's reasons for opposition is not concrete, those comments may also fail to constitute a factual basis for denial. *See C.R. Invs.*, 304 N.W.2d at 325 (concluding that "the vague reservations expressed by" members of the public did not provide factual support for denying the application). However, it is well-established that the locality may consider the evidentiary value of public statements in deciding whether to grant or deny a permit application. *See Swanson v. City of Bloomington*, 421 N.W.2d 307, 313 (Minn. 1988); *Hurrle*, 594 N.W.2d at 251. Here, the County did not rely on the simple existence of public opposition, but on members' concrete evidence that the proposed tower would not fit the rural character of the surrounding area and was unnecessary because of the existing towers.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.   Plaintiff Tillman Infrastructure LLC's Motion for Summary Judgment on the Administrative Record [ECF No. 27] is **DENIED**.

2.       Defendant Stearns County's Cross Motion for Summary Judgment [ECF No. 31] is **GRANTED**.

<b>LET JUDGMENT BE ENTERED ACCORDINGLY.</b>

Dated:  March 31, 2026                                       s/ Eric C. Tostrud
                                                             Eric C. Tostrud
                                                             United States District Court